UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TIM JON SEMMERLING, | ) |
| Plaintiff, | ) ) ) |
| | ) No. 18 C 6640 |
| v. | ) ) Judge Gettleman |
| UNITED STATES OF AMERICA, *et al.,* | ) ) |
| Defendants. | ) |

**THE UNITED STATES' REPLY IN SUPPORT OF ITS MOTION TO STAY**

Plaintiff Tim Semmerling fails to provide any persuasive basis for why this court should not stay this litigation until suspected 9/11 terrorist Walid bin Attash has been tried for his alleged crimes. At bottom, regardless of the legal complexity and scheduling of the 9/11 trial, *this* personal lawsuit should not be an impediment to the American public seeking justice for the most significant and deadly terrorist attack ever to occur on U.S. soil. Thus, this court should exercise its discretion and stay this civil suit.

**Argument**

This lawsuit should be stayed pending the resolution of the 9/11 accused's criminal proceedings before the Military Commission. Many factors weigh in favor of staying this civil suit including: (1) the criminal and civil proceedings share significant overlap relating to attorney client privilege and work product; (2) the accused has been charged and arraigned, and the prosecution is prepared to try the accused; (3) if this lawsuit proceeds to discovery, the accused's defense may suffer adverse consequences, resulting in significant delays before the Military Commission; and (4) a stay of this lawsuit will conserve judicial resources. Lastly, special circumstances exist—the need for the United States to try a co-conspirator of the 9/11 terrorist attacks without further delay—that make it necessary to stay this civil proceeding to avoid

substantial and irreparable prejudice or injury. Nothing in Semmerling's response changes this landscape. Thus, a stay of the civil suit is warranted.

First, the court should see through Semmerling's attempt to downplay the substantial overlap between these two cases. Semmerling argues that the overlap between these two cases is not significant because the issue in this case is "limited to a specific instance where Bormann outed Semmerling's sexuality and indicated Semmerling had a homosexual interest in the client." Dkt. 29, Resp. at 2. Semmerling says that, as a result, he is not seeking privileged or "sensitive" information or anything related to the 9/11 accused's defense. *Id.* Yet a few sentences later Semmerling demonstrates that this lawsuit *is* far more expansive than investigating a single incident: he seeks to investigate "the circumstances that surrounded his termination." *Id.* Semmerling may allege that he was terminated from his employment because of a "personal vendetta harbored against him," Compl. 50, but the reality is that he was terminated because of his misconduct relating to his representation of the 9/11 accused. At bottom, while the cases do not involve precisely the same issues (obviously), this civil action concerns substantive communications between defense attorneys and the criminally accused. *See, e.g.,* Compl. ¶¶ 35, 50, 59, 62-64, 94-97. Further, this civil action also concerns substantive communications between the attorneys of the defense team and Semmerling about the defense of the accused. *Id.* ¶¶ 36, 37, 43, 44. Semmerling's argument that there is no overlap between these two cases is unpersuasive and contrary to his own allegations. The subject of this personal injury case is the handling of the criminal defense of accused terrorist bin Attash.

Next, Semmerling argues that the posture of the criminal proceedings does not warrant a stay because no trial date has been set and the proceedings have already experienced multiple delays. Resp. at 3-4. Semmerling also filed a supplement to his response to argue that the

outstanding claims of torture of the 9/11 defendants (as reported in a recent New York Times article) further demonstrate that the criminal trial will continue to be delayed. Dkt. 34, Supplement, at 2. The 9/11 proceedings *are* moving forward. Indeed, the Chief Prosecutor of the 9/11 cases made another request for a trial date on the record during oral argument today—the morning of April 29, 2019. Thus, the prosecution is prepared to go to trial. Mot. to Stay, at 5-6. Further, the Commission issued a ruling on April 3, 2019, ordering an evidentiary hearing (*i.e.*, a partial trial scheduling order) regarding the suppression of statements made by the accused to the FBI after he arrived at Guantanamo Bay (referred to as "Clean Team Statements"). *See* Ex. A, Ruling, AE 524LLL. Put simply, and contrary to Semmerling's claims that a trial is "speculative," the 9/11 criminal trial is inevitable. Thus, because the criminal proceedings before the Military Commission are progressing, this factor also weighs in favor of granting a stay.

Semmerling also argues that if this lawsuit proceeds, there will be no significant burden on the accused, his attorneys, and the 9/11 criminal proceedings. Semmerling is demonstrably wrong, as recent events in this litigation have already shown. After Semmerling filed his original lawsuit, the accused's defense team requested that the Military Commission abate the 9/11 proceedings until resolution by *this* court of the motion to dismiss in this lawsuit. *See* Mot., at 5, *see also* Mot. at Ex. A, Motion to Abate Commission Proceedings. The criminal defense team argued that until *this* court ruled on the motion to dismiss, the defense team would operate "under a potential conflict" before the Military Commission. *Id.* at 2, 3. The defense team asserted that if this court denied a motion to dismiss and the parties proceeded to discovery, a conflict could arise "between defense counsel and [the accused] because [the accused], all of his defense counsel, some counsel for other codefendants, the Military Judge, the Chief Defense counsel and members of OMC would likely be witnesses." Semmerling claims that the military court denied that motion because it

"found there was no overlap" and that it was "merely speculation" on behalf of the United States that a potential conflict of interest may arise. Resp. at 2, 4. But Semmerling oversimplifies the military court's ruling and overlooks the criminal defense attorneys' position. In fact, the military judge concluded that "no current actual or apparent conflict of interest exists," but that "anything is possible to develop in the course of civil litigation," Ex. B, at 15636-37. In ruling, the court reiterated that it was deciding the issue on the "current state of the record," and that the defense could supplement its motion. *Id.* Further, during the oral arguments on the motion, Bormann informed the military judge that if *this* court denied the pending motions to dismiss, Bormann believed that there would be an "actual conflict," and she would "mov[e] to withdraw, along with the other three members of the defense team." Ex. B, at 15586; *see also id.* at 15587 (Bormann: "If it becomes an actual conflict, then we are required, under ethical rules, to move to withdraw because there is a problem."). It is thus clear based on actual events so far — not speculation — that this personal injury case may disrupt the criminal trial of an accused terrorist if this civil case were to proceed. As such, the court should reject Semmerling's argument that a stay is not warranted because there will be no significant burden on the accused, his attorneys, and the 9/11 criminal proceedings.

4

Next, Semmerling's assertion (Resp. at 5) that formulating a discovery plan in this case would not be difficult, that sensitive discovery could simply be redacted, and that he does not intend to seek discovery that involves issues of national security is naive, at best, as actual events have shown. In his response to the motion to stay, Semmerling seeks to minimize the scope discovery that he intends to seek in this case; yet, in his response to the motion to dismiss, Semmerling argues that the court needs to conduct an evidentiary hearing, it should "require[] live testimony from bin Attash," that Semmerling will seek discovery from "government employees involved in the wrongdoing" and other "witnesses thereto," and that it will be necessary to conduct discovery to determine what statements "were made in and from approximately as many as 16 other states outside of GTMO and Washington D.C." Dkt. 30, Resp. at 4. Semmerling's response to the motion to dismiss is in stark contrast to his response to the motion to stay. It is clear that Semmerling will seek expansive discovery that places a substantial burden on this court, its judicial resources, and all of the parties involved.

The United States addresses the logistical and practical considerations this court and the parties will need to consider when fashioning discovery in its reply in support of its motion to dismiss, *see* Dkt. 38, at 7-10. And, while the United States will not repeat all of the pertinent arguments, there has *never* been an instance in which a "high-value detainee" (HVD), such as the accused, has given oral testimony in a civil suit. There is no precedent for this request and fashioning a discovery plan will be complex and extremely burdensome, if not completely unworkable.

As explained in the United States' motion to stay, discovery "may implicate highly classified and sensitive issues of national security including top-secret information that could be prohibited from public disclosure by the state-secrets doctrine." Mot. at 7. In response, Semmerling simply states that the state-secretes doctrine "does not apply." Resp. at 5. Further, Semmerling argues in his supplement to his response (Dkt. 34) to the motion to stay, that the "question of national security is questionable at best, given that little of the back story is unknown to the public." Dkt. 34 at 3. Semmerling essentially argues that because the American public knows of the allegations of torture of the 9/11 detainees, the United States cannot raise the assertion that national security concerns may be implicated by Semmerling's request for discovery from a 9/11 Accused. But, the implication of national security concerns is not theoretical. While *some* details of the CIA program have since been declassified (*i.e.*, allegations of torture), the accused nonetheless still possess classified information at the "TOP SECRET, Sensitive Compartmented Information (TS/SCI)" level that could require special access program information as well as review by a CIA original classification authority and/or a DoD original classification authority. Unauthorized disclosure of TS/SCI information could cause grave damage to national security, and Semmerling glosses over this issue. Further, until the United States receives Semmerling's discovery requests, it is impossible for the United States to concretely and specifically articulate whether the state-secrets doctrine will prohibit the disclosure of information sought. The United States can only say that given the circumstances and nature of this lawsuit, these considerations are real. The court should reject Semmerling's unsupported assertion that there will be "no difficulty" in drafting a discovery plan. Ultimately, because there may be a substantial burden on this court and the use of judicial resources, judicial economy favors a stay of the civil proceedings. Besides, even if there were a way to manage civil discovery before the criminal trial, there would

still be the fact that the criminal trial would be disrupted merely by the fact that the civil case was proceeding.

Next, Semmerling claims that he will suffer prejudice if his lawsuit is stayed. Resp. at 6-7. Semmerling argues that a delay in this proceeding could result in the loss of discovery and that witnesses' "could disappear, die or have memories fade." *Id.* at 6. Notably, some courts have noted that the "mere fact that additional time will pass . . . does not alone establish prejudice to the plaintiff." *Tucker v. New York Police Dep't,* No. 08–cv–2156, 2010 WL 703189, at *7 (D.N.J. Feb.23, 2010), *aff'd in part,* 408 Fed. App'x 513 (3d Cir. 2010). Rather, to establish prejudice, "plaintiff should establish a unique injury, such as . . . an attempt to gain an unfair advantage from the stay." *In re Derivative Litig.,* No. 06–cv–02964, 2007 WL 1101276, at *2 (E.D. Pa. Apr.11, 2007). Aside from the passage of time—which the United States readily admits will occur—Semmerling fails to articulate any real and *specific* injury.[1] Semmerling claims that one theoretical injury he may suffer if this case is stayed is not being able to alter the record of the 9/11 criminal proceedings. Specifically, Semmerling states that Bormann "made sealed reports to the court regarding Semmerling," "these statements are now part of the historical record," and that if this case is stayed, Semmerling will lose his "opportunity of moving for potential remedies which could include removing those statements from the record or placing an errata statement in the record." Resp. at 7. Once again, Semmerling provides no case law or legal support for the proposition that even if this case proceeds he can get *this court* to change "the historical record" at the 9/11 military proceedings. The court should reject this undeveloped argument.

---

[1] Semmerling claims that the 9/11 accused has "expressed interest in testifying for plaintiff now" but, once the accused goes to trial, he will "no longer cooperate with the American legal system" and his "credibility will decrease." Resp. at 6-7. Semmerling provides no actual support for his position that while the 9/11 accused will testify in support of Semmerling now, yet he won't

Finally, Semmerling argues that there are no extraordinary circumstances that support a stay of this lawsuit because the 9/11 trial has been delayed and, thus, the interests of justice "will not be fulfilled in the foreseeable future." Resp. at 5. The mere lack of a concrete trial date alone does not mean that the American public does not have a strong interest in trying the accused terrorists of the attacks that occurred on 9/11. Ultimately, the interest of justice and the public at large in having the prosecution of the accused finally proceed to trial without further delay substantially outweighs Semmerling's interest in moving forward with his civil suit. As such, special and extraordinary circumstances exist that make it necessary to stay this lawsuit.

## Conclusion

For the above reasons and the reasons set forth in its motion to stay, and in the event the court does not dismiss this civil suit, the court should stay this lawsuit pending the resolution of Walid bin Attash's criminal proceedings before the Military Commission.

           Respectfully submitted,

           JOHN R. LAUSCH, Jr.
           United States Attorney

           By: s/ Kathleen M. Flannery
             KATHLEEN M. FLANNERY
             Assistant United States Attorney
             219 South Dearborn Street
             Chicago, Illinois 60604
             (312) 353-7223
             kathleen.flannery@usdoj.gov

---

after his criminal trial. Further, the notion that the 9/11 accused's credibility will be lessened by the criminal trial is simply theoretical.